UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AUTOMOTIVE MEXICO BODY SYSTEMS,
S. DE R. L. DE C.V.,

Plaintiff,

v.

PITTSBURGH GLASS WORKS, LLC,

Defendant.
_____/

Case No. 15-cv-13592

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
MICHAEL J. HLUCHANIUK

**OPINION AND ORDER DENYING PRELIMINARY INJUNCTION [3]**

**I. INTRODUCTION**

On October 13, 2015, Automotive Mexico Body Systems ("Auto Mexico" or "Plaintiff"), filed the instant action against Pittsburg Glass Works, LLC ("Pittsburgh Glass" or "Defendant") alleging that Defendant had breached its contract with Plaintiff. *See* Dkt. No. 1. On October 14, 2015, Plaintiff filed an Emergency Motion for Preliminary Injunction, for Specific Performance and a Temporary Restraining Order. *See* Dkt. No. 3. The Court denied Plaintiff's request for specific performance on October 16, 2015. *See* Dkt. No. 10.

On October 19, 2015, the Court ordered Defendant to show cause why the Court should not grant a preliminary injunction against the Defendant. *See* Dkt. No. 15. Defendant filed a response on October 21, 2015. *See* Dkt. No. 17. A hearing was held on October 27, 2015 for the preliminary injunction. For the reasons that follow, the Court will **DENY** Plaintiff's request for a preliminary injunction.

## II. BACKGROUND

On October 1, 2012, Plaintiff entered a purchase order requirements contract with Defendant to supply 100% of Plaintiff's needs for 17 different types of highly-engineered glass ("Special Glass"). Dkt. No. 3 at 10–11 (Pg. ID No. 60–61). The Purchase Order is in effect until July 31, 2016. *Id.*

Plaintiff alleges that Defendant has failed to provide the required quantity of the Special Glass since September 21, 2015. *Id.* at 12 (Pg. ID No. 62). At the hearing, it was implied that this was due to an increase in demand for the same materials from another customer, and Defendant had reached capacity. Between September 21 and October 1, the parties had daily meetings, in an attempt to work through the shipping issues. *Id.* On October 1, Defendant notified Plaintiff that it was refusing to provide any future supply of the Special Glass through the month of November. *Id.* Defendant recently increased production of a different type of glass ("Alternate Glass") and offered it as a cover for Plaintiff. Dkt. No. 8 at 6 (Pg. ID No. 127). However, at the hearing, Plaintiff provided evidence that the Alternate Glass is not suitable for one of their customers, Volkswagen.

## III. DISCUSSION

Preliminary injunctions are extraordinary remedies designed to protect the status quo pending final resolution of a lawsuit. *See University of Texas v. Camenisch*, 451 U.S. 390 (1981); *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (finding that preliminary injunctive relief "is an extraordinary measure that has been characterized as 'one of the most drastic tools in the arsenal of judicial remedies.' "). Whether to grant such relief is a matter within the discretion of the district court. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 540 (6th Cir. 2007).

The four factors that must be balanced and considered before the court may issue a preliminary injunction include: (1) the likelihood of the plaintiff's success on the merits; (2) whether the plaintiff will suffer irreparable injury without the injunction; (3) the harm incurred by others if the injunction is granted; and (4) whether the injunction would serve the public interest. *Certified Restoration*, 511 F.3d at 542; *In re Eagle-Pitcher Industries, Inc.*, 963 F.2d 855, 858 (6th Cir. 1992); and *N.A.A.C.P. v. City of Mansfield, Ohio*, 866 F.2d 162, 166 (6th Cir. 1989). "In general, to obtain a preliminary injunction, the injury that would result in the absence of the injunction must be irreparable, not merely substantial." *Goncalves v. Trakul*, No. CIV.A. 14-11384, 2014 WL 2647508, at *4 (E.D. Mich. June 13, 2014) (citing *Sampson v. Murray*, 415 U.S. 61, 90 (1974)).

**A. Irreparable Harm**

"A specific finding of irreparable injury to the movants is the single most important prerequisite that the Court must examine when ruling upon a motion for a preliminary injunction." *Id.* at *6 (citing *Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983)). "An injury is not irreparable 'if it is fully compensable by money damages.' " *Id.* (quoting *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992)).

Here, Plaintiff has not convinced the Court that injunctive relief is necessary. At the hearing, Plaintiff's primary argument was that a failure to obtain injunctive relief would result in assembly line shutdowns at Volkswagen. However, Plaintiff's counsel admitted at the hearing that such consequences are not immediately imminent. Furthermore, Plaintiff advanced the same arguments in their Original Motion for Specific Performance [3], alleging that plants at both GM and Volkswagen all over the country would have to be shut down if emergency relief were

denied. *See* Dkt. No. 3 at 15 (Pg. ID No. 15). When the Court denied Plaintiff's requested relief, none of those consequences materialized.

Even if Volkswagen's line shuts down, it does not constitute irreparable harm. At the hearing, Plaintiff explained they have begun purchasing acceptable glass from a Chinese supplier that would serve as a substitute for Defendant's after about four weeks of testing. While an indefinite shut down could lead to catastrophic problems, *see Eberspaecher North America, Inc. v. Nelson Global Products, Inc.*, 2012 WL 1247174, *5–6 (E.D. Mich. 2012), damages stemming from a one month shut down should be calculable and compensable. In fact, contrary to *Nelson*, even a catastrophic shutdown is reducible to dollars and cents. The Court finds that the harm is not irreparable.

### B. Harm to Others and Public

"The final two considerations require the court to balance the irreparable harm alleged by Plaintiff against any harm that Defendant or the general public will suffer as a result of a preliminary injunction." *Id.* Even if the Court were to find that irreparable harm exists, as it did in *Nelson*, the Court must still balance the equities and consider the relative burdens on the Defendant and third parties who may be affected by the preliminary relief sought. *King & Billow v. MaineToday Media, Inc.*, 2012 WL 4793559, at *4 (M.D. Tenn. 2012).

Here, Defendant has stated that the reason why it ceased shipping the original glass is because there was a large increase in demand from another customer and it decided to prioritize that customer over Plaintiff. There is also evidence on the record that demonstrates Defendant services glass to other major automotive customers. This separates the present case from the case in *Nelson.* In *Nelson*, "[t]he only concrete, countervailing harm Defendant advance[d] [was] the

monetary losses it [would] continue to absorb if forced to keep supplying Plaintiff." *Nelson Global Products*, 2012 WL 1247174 at *6.

Here, if the requested relief were to be granted, it would cause identical shortages for other customers. Therefore, not only would it require the Court to "continuously supervise its execution," *8600 Associates, Ltd. V. Wearguard Corp.*, 737 F. Supp. 44, 45 (E.D. Mich. 1990), but it would cause claims identical to Plaintiff's to multiply amongst third parties. In other words, attempting to address work stoppages faced by Plaintiff would merely cause work stoppages elsewhere. Accordingly, the balance of the equities weighs in favor of denial.

Finding no threat of irreparable harm and the equities heavily favoring denial, it is not necessary to further discuss likelihood of Plaintiff's success on the merits.

### IV. CONCLUSION

For the reasons discussed herein, the Plaintiff's Motion for Preliminary Injunctive Relief is **DENIED.**

IT IS SO ORDERED.

Dated: October 28, 2015  s/Gershwin A. Drain
Detroit, MI  HON. GERSHWIN A. DRAIN
 United States District Court Judge